# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| HOMERO QUINTANILLA NAVARRO ) | |
| ) | |
| v. ) | No. 3:18-cv-1206 |
| ) | |
| UNITED STATES OF AMERICA ) | |

## MEMORANDUM OPINION

After pleading guilty to a three-count Indictment charging him with conspiracy to distribute cocaine and being an alien unlawfully in the United States, Homero Quintanilla was sentenced to 120 months incarceration. In lieu of appealing his convictions or sentence, Quintanilla has filed a Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255 (Doc. No. 1), asserting that his attorney was ineffective for failing to move to suppress evidence obtained during an allegedly illegal search of his property. The Government opposes that Motion (Doc. No. 6).

## I. Factual Background

In pleading guilty to the charges against him, Quintanilla admitted to the following facts as set forth in his plea agreement:

> Between on or about November 4, 2016 and on or about August 5, 2017, in the Middle District of Tennessee and elsewhere, Homero Quintanilla Navarro, an alien previously deported and removed from the United States subsequent to a conviction for the commission of a felony, entered and was found in the United States without the required prior and express consent of the Secretary of Homeland Security for reapplication by the defendant for admission into the United States, in violation of Title 8, United States Code, Sections 1326(a) and (b)(1).
>
> On August 5, 2017, the DEA, using a confidential informant (the "CI"), conducted a series of controlled calls with Quintanilla Navarro. Quintanilla Navarro told the CI that he was ready to meet, and that he had "10 or 11" for him. Quintanilla Navarro told the CI to meet him at the Cracker Barrel restaurant located at Charlotte Pike near Interstate 40, and said he would be there in 45 minutes. The CI responded that he would need an hour.
>
> Prior to the CI's arrival at the Cracker Barrel, Agents established multiple

surveillance positions in and around the area of the Cracker Barrel. The CI parked his vehicle in the Cracker Barrel parking lot. At approximately 11:00 a.m., Agents observed a silver Toyota Camry pull in and circle the Cracker Barrel parking lot. Over the monitoring device, investigators heard the CI confirm that the Camry was Quintanilla Navarro's car. The CI called Quintanilla Navarro and told him where he was parked. Agents observed the silver Camry pull into a parking spot two spots away from the CI's car. Quintanilla Navarro got out of the Camry carrying two red bags. Quintanilla Navarro then got in the front passenger seat of the CI's car. At this time, Agents took Quintanilla Navarro into custody. He had the two red bags at his feet on the floorboard. Located inside the two bags were 10 compressed bricks of cocaine, and each contained in a clear, vacuum-sealed food saver bag. In total, the cocaine weighed 9.929 kilograms.

Following his arrest, Agents provided Quintanilla Navarro with his Miranda rights in English, which he waived. Quintanilla Navarro speaks some English. In English, he told Agents that he received the 10 kilograms of cocaine from a Mexican source of supply, who he refused to identify, four days prior to his arrest. He also said that he had been sent two kilograms of cocaine several weeks prior by the same source of supply, which he had sold to a different cocaine customer in Nashville.

Quintanilla Navarro is not a United States citizen, and has been deported six times, the last time on November 4, 2016. Prior to his deportations, he was voluntarily returned to Mexico ten times between 2004 and 2008. Prior to his most recent reentry, he did not obtain consent of the Attorney General of the United States or the Secretary of Homeland Security for reapplication by the defendant for admission into the United States. Prior to November 4, 2016, he was convicted in federal court of a violation of Title 8, U.S.C. § 1326(a), a felony punishable by more than one year imprisonment.

(Doc. No. 6-5, Plea Agreement ¶ 8).

Quintanilla does not dispute these facts in his Motion to Vacate, nor could he absent compelling circumstance not shown here. After all, "a guilty plea is a grave and solemn act," Brady v. United States, 397 U.S. 742, 748 (1970), and "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also, Rule 11 Advisory Committee Notes (stating that guilty pleas under Rule 11 are taken with "great care," and that such a plea is not a "trifle, but a grave and solemn act which is accepted with care and

2

discernment"); United States v. Carr, 170 F.3d 572, 576 (6th Cir. 1999) (same). In fact, in moving to vacate, Quintanilla relies upon essentially those same facts that were also set forth in the Criminal Complaint for his arrest. (Doc. No. 6-1 ¶ 16-20). Nevertheless, he argues that (1) "[p]robable cause does not exist merely because an individual arrives at a location with bags"; (2) "[u]nverified information from an unqualified confidential source is simply not able to establish probable cause"; and (3) "[a]ssuming arguendo that officers had reasonable suspicion to detain or probable cause to arrest Quintanilla, agents did not have probable cause to open and search the bags with him without a warrant." (Sox. No. 2 at 4).

## II. **Legal Analysis**

As an initial matter, the Government argues that Quintanilla's Motion must be denied because "he did not raise, on direct appeal, his claim that probable cause was lacking for his arrest, and that as a result, all items seized at time of his arrest should have been suppressed." (Doc. No. 6 at 6). This argument, however, misconstrues the nature of the claim. Quintanilla's claim is that counsel was ineffective and, as a practical matter, the Sixth Circuit "generally do[es] not review ineffective assistance of counsel claims on direct appeal because 'a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel . . . and appellate courts are not equipped to resolve factual issues.'" United States v. Franco, 484 F.3d 347, 355 (6th Cir. 2007) (quoting United States v. Aguwa, 123 F.3d 418, 423 (6th Cir.1997)); see also, United States v. Nesler, 659 F. App'x 251, 257 (6th Cir. 2016) (observing that "[g]enerally, a defendant may not raise a claim of ineffective assistance on direct appeal").

Turning to the merits, Quintanilla's claim that the Fourth Amendment was violated and that he was denied the effective assistance of counsel both fail. The Supreme Court has held that the

3

exclusionary rule under the Fourth Amendment is a "judicially created remedy rather than a personal constitutional right," with its focus being "to safeguard Fourth Amendment rights generally through its deterrent effect." Kimmelman v. Morrison, 477 U.S. 365, 376 (1986). Thus, unlawfully obtained evidence is excluded under the rule in order to deter police misconduct; the rule "is not calculated to redress the injury to the privacy of the victim of the search or seizure, for any '(r)eparation comes too late.'" Stone v. Powell, 428 U.S. 465, 486 (1976) (quoting Linkletter v. Walker, 381 U.S. 618, 637 (1965)). As a consequence, the exclusionary rule has "minimal utility . . . when sought to be applied to Fourth Amendment claims in a habeas corpus proceeding." Id. at 495 n. 37. As a further consequence, "a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review." Id. What this means for present purposes is that even "[t]hough free-standing Fourth Amendment claims cannot be raised in collateral proceedings under either § 2254 or § 2255, the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue." Ray v. United States, 721 F.3d 758, 762–63 (6th Cir. 2013).

A criminal defendant is guaranteed the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686–87 (1984). "Defendants claiming ineffective assistance must establish two things. First, that the attorney's performance fell below "prevailing professional norms. And second, that the attorney's poor performance prejudiced the defendant's case." Monea v. United States, 914 F.3d 414, 419 (6th Cir. 2019) (citing Kimmelman, 477 U.S. at 381). "Proving prejudice is not easy" because the petitioner is confronted with the "high

4

burden" of demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (citing Davis v. Lafler, 658 F.3d 525, 536 (6th Cir. 2011)). Where, as here, "defense counsel's 'failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.'" Ray, 721 F.3d at 763 (quoting Kimmelman, 477 U.S. at 375).

In this case, things may have turned out differently for Quintanilla if the almost ten kilograms of cocaine had been suppressed. While he could not change the fact that he was in the country unlawfully, he may well have thought twice before pleading guilty to the two cocaine conspiracy charges, each of which required a minimum sentence of 120-months imprisonment. But Quintanilla would have needed a meritorious ground for a motion to suppress that evidence. He did not, or so a reasonable attorney could have concluded.

"'[A] single, serious error may support a claim of ineffective assistance of counsel,'" including "a failure to file a plainly meritorious motion to suppress." Hendrix v. Palmer, 893 F.3d 906, 922–23 (6th Cir. 2018) (quoting Kimmelman, 477 U.S. at 383). "But 'the failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel.'" Id. "For such a failure to constitute deficient performance, the meritorious nature of the motion must be so plain that 'no competent attorney would think a motion to suppress would have failed.'" Id. (quoting Premo v. Moore, 562 U.S. 115, 124 (2011)); see also, Johnston v. Mitchell, 871 F.3d 52, 63 (1st Cir. 2017) (observing in the context of the failure to file a motion to suppress that "a lawyer's

5

performance does not fall to the level of a Sixth Amendment violation under Strickland simply because the lawyer fails to pursue any and all nonfrivolous strategies"). "A petitioner also must show that counsel had no reasonable strategic rationale for not filing the motion." Id. (citing Davis, 658 F.3d 525 at 537).

Leaving aside whatever strategic reason there might have been in foregoing filing a motion to suppress while at the same time negotiating a concurrent mandatory minimum sentence for both federal cocaine conspiracy charges to run concurrent with pending state court charges, plenty of attorneys would have concluded that filing a motion to suppress would have been fruitless, or at best counter-productive. All that was necessary to arrest Quintanilla was probable cause, meaning that "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, (1964); see United States v. Davis, 430 U.S. 345, 352 (6th Cir. 2005) (same).

Contrary to Quintanilla's suggestion, he was not arrested based solely on the fact that he was carrying a couple of bags. At the time of his arrest, agents had a wealth of knowledge that would have led any reasonably prudent officer to believe Quintanilla was in the process of committing a drug offense when he showed up at the Cracker Barrel. The events leading up to Quintanilla's arrest are detailed in the Criminal Complaint that was filed as of record in this case and obviously available to defense counsel. It shows: (1) federal drug agents met with a confidential source working for the Metropolitan Nashville Police Department on July 1, 2016 in an effort to learn about multi-kilogram cocaine traffickers in Davidson County; (2) the confidential

source was keen to provide such information because he had been arrested the day before while possessing 2½ kilograms of cocaine and $12,619 in cash; (3) at the meeting, the confidential source informed agents that he began purchasing multiple kilograms of cocaine from a Hispanic male who he knew only as "H" beginning in January or February 2015; (4) "H" had wrecked a yellow Hummer on Saundersville Road in March of 2015 that resulted in criminal charges and H's imprisonment; (5) the agents learned that the driver of the Hummer was Quintanilla; (6) the confidential source identified Quintanilla from his booking photograph; (7) when Quintanilla went to jail, the confidential source was provided a different supplier; (8) upon release from imprisonment, Quintanilla went to the confidential source's home on August 3, 2016, and told him he was ready to start selling cocaine again; (9) on August 4, 2016, the confidential source met with Quintanilla where he was shown two-kilogram bricks of cocaine so that he would know Quintanilla was serious; (10) Quintanilla called the confidential source later and told him the price per kilo was $34,000; (11) on August 5, 2016, while being recorded by federal agents, Quintanilla told the confidential source that he had "10 or 11 for him"; and (12) the meeting in the Cracker Barrel parking lot where Quintanilla was arrested occurred less than an hour later. This is more than sufficient to establish probable cause that Quintanilla was engaged in a drug sale. See, United States v. Gill, 685 F.3d 606, 609–10 (6th Cir. 2012) (finding probable cause where, after being arrested for a drug offense, the individual agreed to become an informant, told officers that defendant has sold him drugs in the past, police learned that defendant had a criminal record, informant arranged to purchase 5 ounces of cocaine from defendant, defendant told the informant that he would be driving a green Honda Acura, police waited at the target location, defendant arrived driving the Acura, and defendant briefly ran off once officers approached but stopped when

7

commanded to do so); United States v. Strickland, 144 F.3d 412, 417 (6th Cir. 1998) (finding officers had probable cause to conduct a warrantless arrest of a suspected drug dealer where an informant explained to detectives that he had previously purchased cocaine from defendant, described how the transactions typically took place, detectives then listened as the informant called defendant to arrange a meeting to purchase an ounce of cocaine, the informant and detectives drove to the agreed-upon location at the agreed-upon time, and detectives watched as defendant arrived, got out of his vehicle and got into the informant's car).

Given that probable cause is based upon "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," Illinois v. Gates, 462 U.S. 213, 231 (1983), and further that probable cause presents a "low obstacle" that is attained with "relative ease," Cheolas v. City of Harper Woods, 467 F. App'x 374, 380 (6th Cir. 2012), counsel was not ineffective in failing to challenge Quintanilla's arrest by filing a motion to suppress. The same holds true with regard to moving to suppress the drugs that were seized because the Supreme Court has clearly held that a warrantless search of an automobile incident to a recent occupant's arrest does not violate the Fourth Amendment if "at the time of the search . . . it is reasonable to believe the vehicle contains evidence of the offense of arrest." Arizona v. Gant, 556 U.S. 332, 351 (2009). Having been informed that Quintanilla dealt in multiple-kilogram quantities of cocaine, having heard that Quintanilla was bringing "10 or 11" to the Cracker Barrel, having watched Quintanilla exist his Camry "carrying two red bags," and having seen Quintanilla get into the confidential source's car with those same two bags, and having found those bags on the floorboard where Quintanilla was sitting, it was certainly reasonable to believe that the confidential source's car contained cocaine. See United States v. Adigun, 567 F. App'x 708, 713 (11th Cir.

2014) (finding that where officers knew that defendant was working as a letter carrier under a false identity and that several people on her mail route were victims of identity theft, officers could search defendant's car incident to arrest to see if it contained further evidence of identity fraud); United States v. Dockery, 547 F. App'x 339, 341 (4th Cir. 2013) (finding that where passenger was arrested for possession of drug paraphernalia, defendant's vehicle could be searched incident to arrest to see if it contained other evidence of unlawful drug use); United States v. Laurent, 607 F.3d 895, 903–04 (1st Cir. 2010). ("Even if the drugs were found in the car and not on [defendant's] person, the car search was permitted because there was probable cause to suspect drugs would be found there, given that officers had followed the car immediately after a drug transaction involving [defendant] and given [defendant's] tendency in prior transactions to sell crack cocaine out of a stash of multiple bags that he had with him.").

### III. Conclusion

On the basis of the foregoing, Quintanilla's Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255 (Doc. No. 1) will be **DENIED**. Further, because Quintanilla has not demonstrated that "jurists of reason could disagree with [this Court's] resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 327 (2003), a certificate of appealability under not issue under 28 U.S.C. § 2253.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE